1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE NORTHERN DISTRICT OF CALIFORNIA

3

4  BERNADET GUEVARRA,                        No. C 13-2267 CW

5       Plaintiff,                           ORDER GRANTING
                                             MOTION TO DISMISS
6    v.                                      (Docket No. 14,
                                             27)
7  SETON MEDICAL CENTER; CALIFORNIA
   UNEMPLOYMENT INSURANCE APPEALS
8  BOARD; and ROBERT DRESSER,

9       Defendants.

10 _____/

11      On July 18, 2013, Defendants California Unemployment

12 Insurance Appeals Board (CUIAB) and CUIAB Chairman Robert Dresser

13 moved to dismiss Plaintiff Bernadet Guevarra's complaint.  On

14 September 20, 2013, Defendant Seton Medical Center also moved to

15 dismiss.  Guevarra opposed both motions.  Have considered the

16 papers submitted by all parties, the Court GRANTS Defendants'

17 motions to dismiss with prejudice.

18                          BACKGROUND

19      Guevarra worked as a staff nurse at Seton Medical Center for

20 twelve years.  On May 17, 2011 at 11 P.M., approximately thirty

21 minutes before she went to work, she wrote a Facebook post at her

22 home.  The post stated:

23          Instead of spending my birthday celebrating, I will be
            working all night cleaning up feces.  I hate loathe that
24          effin heffer!!!  Burn in hell you effed up spawn of
            satan.  I curse you and wish you a lifetime of pain and
25          suffering.  That is not enough, right now I would give
            anything you smack you down and pound you to
26          unconsciousness.  'Tang ina mo!!!!!

27

28

> Thanks to the effin heifer who royally effed up my schedule, not only am I working Mothers Day, my birthday and my anniversary. And this Friday, I will be getting the smallest paycheck I had in 12 years due to the 17 percent pay cut we had to endure.

Compl. ¶ 25; Def. CUIAB's RJN, Ex. 6 at CUIAB 71. The "effin heifer" refers to an administrator, and the Facebook post was published to various "friends." A coworker who was connected with Guevarra as a Facebook "friend" shared the content with Seton. Compl. ¶¶ 16-19. Seton called the police. Compl. ¶ 22-23. Guevarra was put on administrative leave. Pl's RJN, Ex. A at 8. Guevarra had received no prior warnings or reprimands. The next day, Guevarra was told that, upon review of her case, she was terminated immediately. The same day, she was served with a temporary restraining order. Def. CUIAB's RJN, Ex. 6 at CUIAB 80.

On June 19, 2011, Guevarra applied for unemployment benefits. Under California Unemployment Insurance Code § 1256, an individual is disqualified for benefits if he or she has been discharged for misconduct connected with his or her most recent work. On September 28, 2011, the Employment Development Department (EDD) mailed Seton a "Notice of Determination." Def. CUIAB's RJN, Ex. 1 at CUIAB 1. The EDD found Guevarra eligible for unemployment insurance benefits and stated, "After considering the available information, [EDD] finds the reasons for the discharge do not meet the definition of misconduct connected with the work." Id. On September 30, 2011, Seton notified EDD of its intent to appeal EDD's decision. Def. CUIAB's RJN, Ex. 2 at CUIAB 4.

On December 21, 2011, the administrative law judge (ALJ) at the EDD's San Francisco Office of Appeals issued a decision

**United States District Court**
For the Northern District of California

reversing the EDD determination and finding that Guevarra was
disqualified for benefits because of her Facebook statement.  Def.
CUIAB's RJN, Ex. 3 at CUIAB 7.  The ALJ defined "misconduct
connected with work" as a "substantial breach by the claimant of
an important duty or obligation owed the employer, willful or
wanton in character, and tending to injure the employer."  Id.
(citing Maywood Glass Col. v. Stewart, 170 Cal. App. 2d 719
(1959)).  The ALJ reasoned that "the statement for which the
claimant was dismissed must be distinguished from a single hot
headed remark or a remark to a co-worker critical of the employer.
This is because the claimant published the statements to a broad
audience which included co-workers."  Id.   The ALJ stated that
Guevarra's remarks were "incendiary, derogatory, and served to
undermine the morale of the employer's workforce."  Id.

     On February 28, 2012, the CUIAB upheld the decision of the
ALJ and supplemented the ALJ's findings by noting that one of
Guevarra's "Facebook friends" was a manager, and that Seton had a
policy prohibiting "threatening, intimidating, coercing,
harassing, [and] using abusive language or behavior[.]"  Def.
CUIAB's RJN, Exh. 4 at CUIAB 13.  The CUIAB concluded that
Guevarra had violated the employer's policy because her posting
"was to persons including co-workers and the claimant's manager
and was not analogous to a private communication conducted outside
of work or the workplace, such as one made in confidence to a
family member."  Id.  Additionally, the CUIAB rejected Guevarra's
claim that she was not discharged for misconduct but rather for
protesting working conditions and exercising her legal rights.
Id.

United States District Court
For the Northern District of California

PROCEDURAL BACKGROUND

I.   Guevarra's Action Against CUIAB

On August 27, 2012, Guevarra filed a petition for writ of mandate in the San Mateo County Superior Court.  Def. CUIAB's RJN, Exh. 5 at CUIAB 17.  On October 18, 2012, the CUIAB filed a demurrer to the writ petition.  The demurrer argued that Guevarra had failed to name her employer, Seton, as the real party in interest, and the six month statute of limitation had run.  Def. CUIAB's RJN, Ex. 7 at CUIAB 137-140.  On February 1, 2012, the San Mateo County Superior Court issued an order sustaining the demurrer, dismissing the case with prejudice and directing judgment in favor of the CUIAB and against Guevarra.  Def. CUIAB's RJN, Ex. 10 at CUIAB 179-180.  On May 14, 2013, the CUIAB filed its Notice of Entry of Judgment.  Under California Rule of Court 8.104(a) Guevarra had sixty days to file a notice of appeal and did not do so.

II.   Guevarra's Action Against Seton

On August 12, 2011, Guevarra filed a complaint in San Mateo County Superior Court against Seton, alleging hostile work environment, defamation, aiding and abetting, wrongful termination in violation of public policy, discrimination, intentional infliction of emotional distress, retaliation, whistleblower protection, breach of contract and breach of the implied covenant of good faith and fair dealing.  Def. CUIAB's RJN, Ex. C, D.  The court granted summary judgment on, among other things, Guevarra's claim for wrongful termination in violation of public policy, finding that she had been discharged for publishing "an angry and profane Facebook posting which threatened physical violence,

4

United States District Court
For the Northern District of California

because she had difficulty in requesting time off for her birthday." Pl's RJN, Ex. A.  The state court also found that section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a) preempted Guevarra's breach of contract and implied covenant of good faith and fair dealing.  Guevarra's employment was governed by a collective bargaining agreement (CBA) between her union, the California Nurses Association, and Seton. Compl. ¶ 1, Ex. A.  Pursuant to the CBA, Seton could only terminate Guevarra's employment for "just cause."  Id. § 43.6.1. The CBA states that any disputes arising under the CBA were to be resolved pursuant to the grievance procedure and arbitration. Declaration of Richard Robinson, Ex. A. § 43.2.

Guevarra and Seton proceeded to a bench trial on three claims: retaliation in violation of the Fair Employment and Housing Act, intentional infliction of emotional distress, and negligent supervision.  On April 26, 2013, the state court judge issued an oral tentative ruling in which he dismissed the three remaining claims.  Declaration of Neda Dal Cielo, Ex. A.  The court found that Guevarra had posted a credible threat of violence against her supervisor and that she had not engaged in whistleblowing.  The judge reasoned that "under both California and federal law the Facebook posting's threats to injure or kill . . . was not constitutionally protected free speech[.]"  Id. at 61 (citation omitted).  Seton submitted a proposed decision, and the court has not yet issued the final decision.

Two weeks later, on May 17, 2013, Guevarra filed the instant case.  She alleged four causes of action: (1) violation of free speech under the First Amendment under 42 U.S.C. § 1983, alleged

against the CUIAB and Dresser only; (2) violation of due process under the Fourteenth Amendment under § 1983, against the CUIAB and Dresser only; (3) breach of contract and covenant of good faith and fair dealing against Seton only; and (4) violation of her right to free speech under the California Constitution, against Seton only.  She seeks declaratory and injunctive relief against the CUIAB and general and special damages.  The CUIAB, Dresser, and Seton now move to dismiss Guevarra's complaint.

LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff.  NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Dismissal is also appropriate under Federal Rule of Civil Procedure 12(b)(1) when the district court lacks subject matter jurisdiction over the claim.  Subject matter jurisdiction is a threshold issue that goes to the power of the court to hear the case.  Therefore, a Rule 12(b)(1) challenge should be decided

United States District Court
For the Northern District of California

before other grounds for dismissal, because those grounds become moot if dismissal is granted.  Alvares v. Erickson, 514 F.2d 156, 160 (9th Cir. 1975); 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1350, p. 210 (2d ed. 1990).  An action should not be dismissed for lack of subject matter jurisdiction without giving the plaintiff an opportunity to amend unless it is clear that the jurisdictional deficiency cannot be cured by amendment.  May Dep't Store v. Graphic Process Co., 637 F.2d 1211, 1216 (9th Cir. 1980).

DISCUSSION

I.   Guevarra's Causes of Action Against Defendants CUIAB and Dresser

Guevarra's first two causes of action against Defendants CUIAB and Dresser allege that they have violated her free speech right under the First Amendment and violated her due process right under the Fourteenth Amendment.  Guevarra's first cause of action alleges that these Defendants applied Unemployment Insurance Code § 1256 "in an overbroad manner that renders the statute uncertain, ambiguous and impermissibly burdens speech."  Compl. ¶ 45.  Guevarra's second cause of action alleges that Defendants CUIAB and Dresser deprived her of due process in reversing the original decision of the EDD and expanding the ALJ's decision.  Compl. ¶ 47.  Guevarra alleges that the CUIAB failed to follow its own precedential decisions that found that a hotheaded outburst of anger should be considered a "minor peccadillo" insufficient to disqualify an individual for benefits.  Compl. ¶ 51.  Guevarra argues additionally that "her Filipino culture was not considered," and that the CUIAB's decision finding that there was

7

1    no pretext or discriminatory reason for the discharge violated her

2    rights to due process and equal protection.  Compl. ¶¶ 49-50.

3        A.  Subject Matter Jurisdiction

4        The CUIAB and Dresser contend that Guevarra's claims are

5    barred by the <u>Rooker-Feldman</u> doctrine because, in order to

6    adjudicate this case, the Court would have to engage in the review

7    of state court determinations regarding Guevarra's claims against

8    the CUIAB and Dresser.

9        Under the <u>Rooker-Feldman</u> doctrine, a federal district court,

10   as a court of original jurisdiction, has no authority to review

11   the final determinations of a state court in judicial proceedings,

12   even when the challenge alleges that the state court's action was

13   unconstitutional.  <u>See</u> <u>District of Columbia Court of Appeals v.</u>

14   <u>Feldman</u>, 460 U.S. 462, 476 (1983); <u>Rooker v. Fidelity Trust Co.</u>,

15   263 U.S. 413, 415 (1923); <u>Worldwide Church of God v. McNair</u>, 805

16   F.2d 888, 891 (9th Cir. 1986).  "The rationale behind this

17   doctrine is that the only federal court with the power to hear

18   appeals from state courts is the United States Supreme Court."

19   <u>Bennett v. Yoshina</u>, 140 F.3d 1218, 1223 (9th Cir. 1998). "The

20   <u>Rooker-Feldman</u> doctrine, generally speaking, bars a plaintiff from

21   bringing a § 1983 suit to remedy an injury inflicted by the state

22   court's decision."  <u>Jensen v. Foley</u>, 295 F.3d 745, 747 (7th Cir.

23   2002).

24       The <u>Rooker-Feldman</u> doctrine applies when a plaintiff in

25   federal court alleges a "de facto appeal" of a state court

26   judgment by (1) asserting errors by the state court as an injury

27   and (2) seeking relief from the state court judgment as a remedy.

28   <u>Kougasian v. TMSL, Inc.</u>, 359 F.3d 1136, 1140 (9th Cir. 2004).

When determining whether a plaintiff has asserted an error by the state court as her injury, the court must distinguish between "a legal error by the state court" and "a wrongful act by the adverse party." Id. at 1140-41. A court must consider "the essence of the action, not how [the plaintiff] chooses to frame the action" when determining whether a plaintiff's injury emanates from state-court error or independently wrongful conduct. Hettinga v. Orlando, 2009 WL 2031779 (N.D. Cal.)(citing Feldman, 460 U.S. at 483).

Here, Guevarra's complaint against the CUIAB and Dresser constitutes a de facto appeal that asks the Court to review the state court's denial of her prior claims. In her state court petition Guevarra alleged that the CUIAB decision regarding her unemployment insurance benefits violated her right to free speech under the First Amendment and violated her due process right by failing to follow its own precedential decisions. Def. CUIAB's RJN, Ex. 6 at CUIAB 1,3,4,7,9, 10-15. The San Mateo County Superior Court sustained the demurrer without leave to amend and dismissed Guevarra's petition with prejudice. Guevarra's claims in her federal complaint now repeat those of her state court petition; she alleges that the CUIAB and Dresser violated her First Amendment and due process rights. Complaint ¶¶ 47, 51. The factual allegations giving rise to Guevarra's injuries in the instant case have already been adjudicated in the state action. Thus, Guevarra is essentially asking the Court to reverse the judgment of the San Mateo County Superior Court. Because Guevarra is (1) asserting errors by the state court as an injury, and

(2) seeking relief from the state court judgment as a remedy, the Court finds that the <u>Rooker-Feldman</u> doctrine deprives the Court of jurisdiction. <u>Kougasian</u>, 359 F.3d at 1140. The Court grants the CUIAB and Dresser's motion to dismiss Guevarra's § 1983 claims for this reason.

B.   Failure to State a Claim

Defendants CUIAB and Dresser also contend that Guevarra has failed to state a claim because (1) the CUIAB is immune from suit under the Eleventh Amendment and is not a person who can be sued under § 1983, (2) Guevarra has stated no claim against Dresser, and (3) Dresser enjoys qualified immunity.

1.   Eleventh Amendment

The Eleventh Amendment bars the entire action against the CUIAB. As a state agency, the CUIAB is an "arm of the state" and not a "person" under § 1983. <u>See</u> <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 90 (1989). Further, because a suit against a state actor in his official capacity is no different from a suit against the state itself, the Eleventh Amendment also bars damages actions against state officials in their official capacity. <u>Id.</u> at 71; <u>see</u> <u>also</u> <u>See</u> <u>Flint v. Dennison</u>, 488 F.3d 816, 824-25 (9th Cir. 2007). Guevarra's complaint purports to sue Dresser in his official capacity. Accordingly, the Court grants CUIAB's motion to dismiss on these grounds and bars claims against Dresser for money damages.

2.   Claim Against Dresser

Guevarra has not stated a claim against Dresser for equitable relief and could not sue him for money damages in his personal capacity. A person deprives another of a constitutional right,

"within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'"  Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  Here, Guevarra merely states that Dresser is "the highest executive office[r] of the CUIAB with decision making power over the agency."  Compl. ¶ 11.  This is not sufficient to survive a motion to dismiss.  Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  Guevarra has not alleged that Dresser directed particular decision-making or explained how his actions have a "causal connection" with her constitutional deprivation.  Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1978).  Nor could Guevarra sue Dresser based on supervisory liability.  "Liability under § 1983 arises only upon a showing of personal participation by the defendant . . . .  There is no respondeat superior liability under § 1983."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989)(citations omitted).  Accordingly, Guevarra has failed to set forth facts connecting Dresser to her alleged injury.

3.  Qualified Immunity

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The rule of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law," and defendants can have a

United States District Court
For the Northern District of California

1  reasonable, but mistaken, belief about the facts or about what the

2  law requires in any given situation.  Saucier v. Katz, 533 U.S.

3  194, 202 (2001).

4      Dresser is not alleged to have taken any action that violated

5  any clearly established right of Guevarra's.  Thus, even if she

6  had stated a claim against him over which this Court had

7  jurisdiction, Dresser would be entitled to the protections

8  afforded by qualified immunity from suit for damages.

9      4.  Leave to Amend Denied

10     The Court will not permit Guevarra to amend the complaint to

11  add the ALJ or the CUIAB panel members.  Judges and officials

12  performing quasi-judicial functions enjoy absolute immunity.

13  Mitchell v. Forsyth, 472 U.S. 511, 520 (1986).  Courts have

14  extended absolute judicial immunity "to officers whose functions

15  bear a close association to the judicial process," and

16  specifically to administrative law judges.  Demoran v. Witt, 781

17  F.2d 155, 156 (9th Cir. 1985).

18     Dismissal of a complaint without leave to amend can be

19  granted where the defect cannot be cured by amendment.  Eminence

20  Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

21  Because the defects here cannot be cured, the Court dismisses

22  Guevarra's complaint against the CUIAB and Dresser without leave

23  to amend.

24  II.  Causes of Action Against Defendant Seton Medical Center

25     Defendant Seton Medical Center moved to dismiss the third

26  cause of action for breach of contract for failure to exhaust

27  contractual remedies, a "nonenumerated" Rule 12(b) motion, citing

28  Ritza v. Int'l Longshoremen's & Warehousemen's Union, 738 F.2d

United States District Court
For the Northern District of California

365, 368 (9th Cir. 1998).  Seton moved to dismiss Guevarra's fourth cause of action due to the "absence of sufficient facts alleged under a cognizable legal theory," citing <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1988).  In the alternative, Seton also moved to stay this case pursuant to the <u>Colorado River</u> doctrine.

A.  Breach of Contract and of the Covenant of Good Faith and Fair Dealing

Guevarra's third cause of action alleges that Seton breached its contract and the covenant of good faith and fair dealing. Seton points out that members of a collective bargaining unit cannot claim a breach of the CBA without first exhausting contractual grievance procedures, which Guevarra failed to do. Accordingly, Guevarra is barred from bringing a claim.  29 U.S.C. § 185; <u>Young v. Anthony's Fish Grotto of La Jolla</u>, 830 F.2d 993, 997 (9th Cir. 1987).

Section 301 of the LMRA provides federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization."  Federal law exclusively governs a suit for breach of a collective bargaining agreement under § 301, the preemptive scope of which displaces any state cause of action based on a collective bargaining agreement, as well as any state claim whose outcome depends on analysis of the terms of the agreement.  <u>Id.</u> at 997.

Although courts generally may not look beyond the complaint when deciding a motion pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court considers the full collective bargaining

United States District Court
For the Northern District of California

agreement.  Where a plaintiff relies on a document in the complaint, but does not attach it, the moving party may introduce the exhibit as part of its motion attacking the pleading.  In re Stac Electronics Securities Litig., 89 F.3d 1399, 1405, fn. 4 (9th Cir. 1996).  Because Guevarra herself referred to the CBA by attaching portions of it to her complaint, the Court considers the full CBA.

Guevarra's failure to use the grievance procedures bars her from pursuing remedies in court.  The general rule is that "a bargaining unit employee may not bring an action for breach of the collective bargaining agreement unless he has exhausted the contractual grievance procedures."  Jackson v. Southern California Gas Co., 881 F.2d 638, 646 (9th Cir. 1989).  Guevarra's contention that the grievance procedures were not mandatory is incorrect.  The CBA prescribes that its procedure for grievance is binding and mandatory: "The parties shall use the following procedure in an effort to resolve any grievances which may arise during the term of the Agreement . . . The decision of the impartial arbitrator shall be final and binding upon the parties."  Robinson Dec., Ex. A, §§ 43.2.1, 43.3.1.  Section 43.6.1 states, "The Medical Center shall have the right to discharge or assess disciplinary action for just cause."  Id. § 43.6.1.  Section 44.6.3 states, "Should any disagreements arise that cannot be resolved between the parties, the matter shall be resolved according to the arbitration procedure described in this section."  Id. § 44.6.3.  Accordingly, the grievance procedures are mandatory.

Guevarra contends with a single sentence in her response brief that her union failed to grieve for her.  Pl's Resp. at 20.

**United States District Court**
For the Northern District of California

In support of this contention, Guevarra cites from her complaint and deposition without providing any further details.  Guevarra's complaint states that "Plaintiff contacted her union representative to discuss the termination but was emotionally devastated, tearful and not very coherent," and that "Plaintiff alleges that the union's failure to grieve the termination was arbitrary and contrary to Plaintiff's preference."  Compl. ¶¶ 26, 27.  In Guevarra's deposition she states that the union neglected to advise her of the need to file a grievance.  Pl's RJN, Ex. O.  "An exception to the general requirement of exhaustion exists . . . where the employee demonstrates that the union representing the employee in the grievance/arbitration procedure [has acted] in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 986 (9th Cir. 2007)(internal citation and quotation marks omitted). Vaca v. Sipes, 386 U.S. 171 (1967), held that "the wrongfully discharged employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance." Id. at 186.  Thus, an employee who seeks to bring an individual suit against an employer for breach of the CBA must allege and prove that the union reached its duty of fair representation. Soremekun, 509 F.3d at 986.

Here, neither Guevarra's state court action nor the instant action against Seton alleges that her union breached the duty of

fair representation.  Further, even if Guevarra could allege the

union's breach of its duty of fair representation, her § 301 claim

would be barred by the statute of limitations, which is six months

and has expired.  29 U.S.C. § 160(b); DelCostello v. Int'l

Brotherhood of Teamsters, 462 U.S. 151, 169-70 (1983).

    Because Guevarra has failed to exhaust the mandatory

grievance procedures prescribed in the CBA and has not alleged the

union's breach of its duty of fair representation and it is too

late to do so now, there is no reason to grant Guevarra leave to

amend her complaint.  Guevarra's claims against Seton for breach

of the contract and breach of the covenant of good faith and fair

dealing must be dismissed.

    B.   Violation of Free Speech Right Under the California
         Constitution

    Guevarra's fourth and final cause of action alleges that

Seton violated her right to free speech under the California

Constitution.  Article I, Section 2(a) of the California

Constitution provides, "Every person may freely speak, write and

publish his or her sentiments on all subjects, being responsible

for the abuse of this right."  Seton argues that Guevarra's

complaint should be dismissed because the California Constitution

does not apply to private employers, noting that the section

provides, "A law may not restrain or abridge liberty of speech or

press."  Cal. Const. Art. I, Sec. 2.  However, each of the cases

Seton cites in support of its argument discusses the state actor

limitation of the First Amendment to the United States

Constitution, or discusses the divide among California courts of

appeal with respect to whether Article 1, Section 2 contains such a limitation.  See, e.g., Grinzi v. San Diego Hospice Corp., 120 Cal. App. 4th 72, 81 (2004) (analyzing First Amendment rights); Eisenberg v. Alameda Newspapers, 74 Cal. App. 4th 1359, 1391 (1999) (same); Warwick v. Univ. of the Pac., 2008 U.S. Dist. LEXIS 97207, *16 (N.D. Cal.) (noting that "California courts of appeal are somewhat divided" on the issue).

Plaintiff counters that the right to free speech under the California Constitution is broader than the federal right and extends to private employers.  Plaintiff cites cases in which the California Supreme Court enforced Article I, Section 2 against a private entity.  However, each of those cases involved free speech on privately owned property that had been opened to the public. See, e.g., Press v. Lucky Stores, 24 Cal. 3d 311 (1983) (dealing with circulation of petitions in a privately owned shopping center); Robins v. Pruneyard Shopping Center, 23 Cal. 3d 899, 910 (1979) ("Shopping centers to which the public is invited can provide an essential and invaluable forum for exercising [free speech] rights.").  There is nothing in those cases that broadly discusses the application of Article I, Section 2 to private actors.  Instead, they discuss "restrictions private property owners placed on people exercising speech rights on private property . . . that had been opened to the public such that the private property in essence becomes a public forum." Campbell v. Feld Entm't, Inc., 2013 U.S. Dist. LEXIS 145495, *22-*23 (N.D. Cal.); see also Cuvello v. City of Stockton, 2008 U.S. Dist. LEXIS 116537, *23 (E.D. Cal.) (finding that Article I, Section 2

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   "extends to those private actors who open their land to the public

2   and, in so doing, resemble state actors.").

3        Accordingly, the Court finds that Article I, Section 2 does

4   not provide a cause of action in this case.  The Court notes that

5   a number of other federal district and California courts have

6   found that a state action limitation is required under Article I,

7   Section 2.  <u>See, e.g.</u>, <u>Campbell</u>, 2013 U.S. Dist. LEXIS at *24

8   ("Article I, Section 2 protects only against interference by state

9   actors of citizens' exercise of speech rights in a public

10  forum."); <u>Bolbol v. Feld Entmt, Inc.</u>, 2013 U.S. Dist. LEXIS 9800,

11  *17-18 (N.D. Cal.) (same) ; <u>Ennis v. City of Daly City</u>, 2011 U.S.

12  Dist. LEXIS 15824, *16 (N.D. Cal.) (finding that "the California

13  Constitution's free speech clause has a state action limitation");

14  <u>Thornbrough v. W. Placer Unified Sch. Dist.</u>, 2010 U.S. Dist. LEXIS

15  53136, *19 (E.D. Cal.) ("California's free speech clause

16  predicates a violation upon state action."); <u>Yu v. Univ. of La</u>

17  <u>Verne</u>, 196 Cal. App. 4th 779, 790 (2011) ("A person's free speech

18  rights under the federal and state constitutions are not infringed

19  unless there is state action.").

20       The Court dismisses Guevarra's fourth cause of action.

21                              CONCLUSION

22       The Court GRANTS the CUIAB and Dresser's motion for dismissal

23  with prejudice on the grounds of lack of subject matter

24  jurisdiction and Eleventh Amendment immunity.  The Court GRANTS

25  Seton's motion for dismissal with prejudice of the third cause of

26  action on the grounds that Guevarra failed to exhaust the

27  grievance procedures pursuant to the CBA and her time to do so has

28  expired.  The Court GRANTS Seton's motion for dismissal of the

fourth cause of action with prejudice because Seton is a private employer, not a government actor.  The clerk shall enter judgment and close the file.  Both parties shall bear their own costs of suit.

 IT IS SO ORDERED.

Dated:  12/2/2013



CLAUDIA WILKEN
United States District Judge